IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CRIM NO. 07-1971 RB

GEORGE GALLARDO

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the United States' Consolidated Motions to Exclude Testimony and Conduct *Daubert* Hearing (Doc. 73) filed on October 30, 2008; the United States' Amended Notice of Intent to Offer Evidence Pursuant to Federal Rule of Evidence 414 and Motion in Limine (Doc. 112) filed on July 30, 2009; and Defendant's Notice of Intent to Cross-Examine the Alleged Victim Regarding Her Prior Conviction for Shoplifting (Doc. 60) filed on July 18, 2008. Jurisdiction arises under 28 U.S.C. § 1331.

Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, the Court grants United States' Motion to Exclude Testimony of Dr. Juan N. Sosa. Additionally, the Court will permit the Untied States to introduce testimony pursuant to Federal Rule of Evidence 414. And finally, the Court will allow Defendant to question one of the alleged victims concerning a prior juvenile conviction for shoplifting, with the stipulation that the United States may also question the witness in order to more fully develop the record and circumstances surrounding the incident.

I.      **PROCEDURAL BACKGROUND**

Defendant, George Gallardo, was indicted in this case on September 25, 2007. The original indictment was superceded on February 10, 2009, and Defendant was charged with five counts of Aggravated Sexual Abuse with Children and Abusive Sexual Contact involving victim Laura G. in Indian Country in violation of 18 U.S.C. §§ 1152, 2241(c), 2244(a)(1), 2246(2)(A), 2246(2)(C), and 2246(3), and one count of Aggravated Sexual Abuse with Children involving victim Raquel P. in Indian Country in violation of 18 U.S.C. §§ 1152, 2241(c), and 2246(2)(C). (Doc. 86.)

In anticipation of trial in this matter, Defendant announced his intent to call psychologist Dr. Juan N. Sosa as an expert witness (Doc. 55) to testify that he suffers from erectile dysfunction. (Doc. 57.) The United States filed Consolidated Motions to Exclude Testimony, or in the Alternative to Compel Discovery and Conduct *Daubert* Hearing. (Doc. 77.) Defendant provided the requested discovery, and the Motion to Compel Discovery was declared moot. (Doc. 121.) A *Daubert* hearing was scheduled for August 27, 2009 to rule on the Motion to Exclude Testimony. (Doc. 119.)

The United States also filed an Amended Notice of Intent to Offer Evidence Pursuant to Federal Rule of Evidence 414 and Motion in Limine on July 30, 2009. (Doc. 112.) In addition to the testimony of the two alleged victims named in the Superceding Indictment, the government also sought to introduce testimony of three other alleged victims—Vernalyn Fawn C., Loucinda S., and Frizzel F., Jr.—to corroborate the victims' testimony. Defendant filed a Response to Government's Amended Notice (Doc. 120), and this matter was also scheduled for hearing on August 27, 2009.

Finally, Defendant filed Notice of Intent to Cross-Examine the Alleged Victim Regarding Her Prior Conviction for Shoplifting on July 18, 2008 pursuant to Federal Rule of Evidence 609(a)(2). (Doc. 60.) This Notice was unopposed by the United States. At the request of the Court, the parties agreed to address this matter at the hearing on August 27, 2009.

## II.  STATEMENT OF FACTS

Defendant has been charged with several counts of child molestation against Laura G. and Raquel P. Defendant is accused of sexually abusing and molesting Laura sometime between July 4, 2003 and August 1, 2003 by forcing her to perform vaginal sex with him when she was approximately thirteen years old. Defendant also stands accused of forcing Laura to perform additional sexual acts with him between July 1, 2003 and Aug. 31, 2003 in the Defendant's bedroom, kitchen, and living room while he was at home alone with her. Laura was orphaned when her mother was killed in a car accident, and after the accident, she was placed in the custody of Defendant and his wife. The sexual abuse is alleged to have occurred when Defendant was acting as Laura's guardian.

Defendant also stands accused of sexually abusing Raquel P. sometime between May 1, 1989 and May 31, 1990 when Raquel was approximately seven years old. Raquel claims that Defendant committed these acts when he was alone with her inside his house. Raquel's mother and aunt had gone to her mother's house to get blankets, and Raquel's brothers were outside playing. Raquel claims that Defendant called her into his living room where he was sitting on the couch and inappropriately touched her, including digital penetration of her vagina. After he finished, Defendant told Raquel, "If you tell anybody, I will do it again."

In addition to the testimony of the two victims, Laura and Raquel, named in the indictment, the United States also intends to offer the testimony of three other victims who claim that Defendant sexually molested them when they were children. First, the United States plans to call on Vernalyn Fawn S., who will testify that Defendant physically and sexually abused her on several occasions at his residence while she was living there following the death of her mother. According to Vernalyn, Defendant would take her into a bedroom and lay on top of her. This activity was painful

for her because she recalls he was very heavy. When Defendant would get off of her, she recalls that she would have a white substance on her stomach. She is not sure whether Defendant ever penetrated her. She also believes that Defendant did similar things to her sister, Loucinda C., when he was alone with her.

The government will also call Loucinda C., who will testify that Defendant began sexually abusing her when she was approximately seven years old, and that the abuse continued for approximately two years until she ran away. Loucinda believes that Defendant Gallardo sexually abused her three to four days a week, and that on several occasions the sexual abuse continued all day. Generally, the sexual abuse occurred while her aunt was out of the house attending college courses. When Defendant sexually abused her, he would scare her and make her touch his penis while he lay naked on his bed. Loucinda will testify that Defendant digitally penetrated her vagina on several occasions, that he also tried to penetrate her with his penis, and that he would kiss her and "spit saliva into her mouth."

Finally, the government intends to call Frizzel F., Jr. When Frizzel was approximately twelve years old, his father sent him to Defendant's house for boxing training. At the end of the last class, which no one else attended, Defendant asked him to come inside for a break. Frizzel will testify that Defendant made sexual advances, grabbed his own genital area and told him, "Come on, let me show you, you can touch them and hold them." At that point, Frizzell walked out of the house, and his mother picked him up shortly thereafter.

Defendant claims that the instances of sexual abuse discussed above are fabrications and that he could not have abused the children because he has been suffering from erectile dysfunction since a work-related accident in 1995 when he fell and injured his back. According to Defendant's proffered expert, Dr. Sosa, he has been suffering from extreme pain, depression, erectile

dysfunction, and psychological problems since the accident. In a letter to Defendant's probation officer dated July 28, 2008, Dr. Sosa claims that Defendant has been suffering from erectile dysfunction since at least 1997 or 1998 when both Defendant and Defendant's wife reported the condition to Dr. Sosa. (Doc. 79-2.) He also stated that Defendant had confided in him sometime between 1997–2000 that there had been some unsubstantiated accusations against him regarding the sexual abuse of children.

Sometime in 2000, Defendant discontinued his treatment with Dr. Sosa, and neither he nor his wife were seen again until 2007. In 2007, Dr. Sosa resumed treating Defendant at the request of Defendant's attorney. In his letter to Defendant's probation officer, Dr. Sosa stated that Defendant still suffers from erectile dysfunction, that Defendant's wife corroborated this, that Defendant has "denied any interest in children," and that "he has never abused any one under the family's care." Nowhere in the letter does Dr. Sosa state what scientific tests or analysis, if any, were performed to determine that Defendant suffers from erectile dysfunction, and Dr. Sosa admitted that there are no records available relating to his treatment of Defendant prior to 2007. Additionally, at the *Daubert* hearing on August 27, 2009, Dr. Sosa admitted that there is no reliable test for diagnosing erectile dysfunction, and that he diagnosed Defendant's condition based solely on Defendant's self-reporting and his wife's corroboration.

### III. RULE 702 *DAUBERT* HEARING

Defendant intends to call psychologist Dr. Juan N. Sosa as an expert witness at trial to testify that he suffers from erectile dysfunction. Defendant argues that Dr. Sosa's testimony should be admitted because it is "incontrovertibly reliable and relevant." (Doc. 77.) The United States argues that the testimony is not reliable and should be excluded because Dr. Sosa is neither a neurologist

5

nor a urologist—the type of medical professional typically called upon to diagnose erectile dysfunction—and Dr. Sosa's opinions are based solely on the uncorroborated statements of Defendant and his wife. (Doc. 79.)

Federal Rule of Evidence 702 controls the admission of proposed expert testimony and imposes an important gate-keeping function on trial judges. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). Under Rule 702 there are three general prerequisites to the admissibility of evidence from expert witnesses: (1) the evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue"; (2) the proposed witness must be "qualified as an expert by knowledge, skill, experience, training, or education" to provide the finder of fact with that assistance; and (3) the proffered evidence must be reliable. Fed. R. Evid. 702.

### A. Expert Testimony Must Assist the Trier of Fact

Under Federal Rule of Evidence 702 and *Daubert*, expert testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. 509 U.S. at 592. If expert testimony in this case could reliably show that Defendant suffers from erectile dysfunction, then this would clearly be relevant and helpful to the jury in determining a fact in issue. However, Dr. Sosa's conclusion that Defendant suffers from an erectile dysfunction is based solely on Defendant's self-reporting of the condition and corroboration from his wife. While Dr. Sosa hinted at possible links between depression and erectile dysfunction during his testimony at the *Daubert* hearing, he did not present any scientific theory or study that would distinguish his testimony from what would otherwise be inadmissible, self-serving hearsay if given by a lay witness. Unreliable expert testimony is not helpful to the trier of fact, and there is a real danger in this case that if Dr. Sosa's testimony were presented to the jury with the imprimatur of expert testimony that it may do more

6

to mislead or confuse the jury than to assist them in understanding the evidence or determining a fact in issue.

## B. Proposed Witness Must Be Qualified as an Expert

Next, the trial court must determine whether the expert has the "knowledge, skill, experience, training, or education" to render an expert opinion. Fed. R. Evid. 702. The expert should have enough specialized experience and skills to be able to answer specific questions relating to matters at issue in the case. *Ralston*, at 969–70 ("Merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue"); *see also Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995) ("Just as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.")

While an expert must qualify to testify based on "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, it is not necessary for an expert to have an advanced degree in the field he is testifying on, nor does he have to qualify in all five areas. For example, a witness can be qualified based solely on his experience. *See, e.g., United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2001) (admitting testimony from law enforcement officer based solely on his experience with methamphetamine cooks). Nonetheless, the trial court should exclude testimony where the witness fails to meet any of the standards and qualifications concerning the proposed testimony or where the proffered evidence extends beyond the witness's demonstrated expertise. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).

While it appears that Dr. Sosa has substantial experience treating patients for depression and other psychological disorders, he has not presented any evidence indicating that he has any special

"knowledge, skill, experience, training, or education" in diagnosing erectile dysfunction. At the *Daubert* hearing, Dr. Sosa testified that erectile dysfunction can sometimes occur as a result of depression or serious injury, such as that suffered by Defendant, and that he has treated other patients that claim they suffer erectile dysfunction. But while Dr. Sosa has some experience working with patients who have self-reported erectile dysfunction, he has not shown how this qualifies him as an expert in the diagnosis of erectile dysfunction. In fact, Dr. Sosa stated at the *Daubert* hearing that there is currently no reliable test for determining whether or not someone suffers from erectile dysfunction, conceding his inability to provide a reliable diagnosis.

### C. Evidence Must Be Reliable

"[A]n expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). Thus, in exercising its gate-keeping function, the trial court must also determine whether an expert's opinions are reliable. *Ralston*, 275 F.3d at 969. In assessing the reliability of expert testimony under 702, the trial judge must consider whether "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

#### 1. Based on Sufficient Facts or Data

The trial court must consider whether the expert developed his testimony based upon his own independent research and analysis of relevant facts and data, or whether his opinion was developed specifically for the purpose of testifying at trial. In other words, is the expert a "hired gun" or someone whose courtroom testimony can withstand the scrutiny of his professional peers. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997).

Dr. Sosa openly admitted at the *Daubert* hearing that there is no reliable test for erectile

dysfunction and that his diagnosis was based solely on the self-reporting of Defendant and his wife. Thus, Dr. Sosa's testimony lacks any serious factual or scientific background and is based solely on anecdotal evidence. *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1025–26 (10th Cir. 2002). Dr. Sosa did not present the results of any tests conducted or any other empirical data or objective research tending to show that Defendant suffers from erectile dysfunction. Furthermore, Dr. Sosa has no records from 1997–2000 when he started treating Defendant, and Defendant first reported that he had an erectile dysfunction. Thus, the Court is wholly dependent on Dr. Sosa's memory for elucidating what facts and data, if any, Dr. Sosa relied on in reaching his conclusion. If Dr. Sosa were allowed to present this evidence to the jury, he would clearly be speculating, and it is the trial court's duty as gatekeeper to keep such unreliable testimony from the trier of fact.

### 2. *Product of Reliable Principles and Methods*

In *Daubert*, the Court set out the following factors to be followed by trial judges in determining the reliability of an expert's methods:

1. Whether the technique can or has been tested;
2. The known or potential rate of error experienced in the application of the particular technique;
3. Whether the theory or technique has been published and subjected to peer review;
4. The existence of standards and controls for the application of the technique the witness has applied in arriving at his or her opinion, and whether the witness applied those standards and controls;
5. Whether the theory or technique is generally accepted in a definable relevant community.

509 U.S. 579, 592–93 (1993). The above inquiry is flexible, and the trial court does not have to consider all of the factors listed. *Daubert*, 509 U.S. at 594; *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004). The goal of the inquiry is to ensure that the proffered testimony is valid and reliable before it is presented to the trier of fact. Most importantly, the trial court's inquiry must focus only on the principles and methodology used by the expert in reaching his conclusion, not on

the results obtained by the expert. *Daubert*, 509 U.S. at 595.

Dr. Sosa's testimony has absolutely no grounding in scientific principles or methodology. At the *Daubert* hearing, Dr. Sosa presented no testable theories, techniques, or principles that he applied to this case. In diagnosing Defendant, Dr. Sosa stated, "I had no evidence other than his word." This type of diagnosis simply does not meet the standard of reliability envisioned by *Daubert* where an expert's courtroom opinion is such that it can be independently tested and subjected to peer review.

### 3. Expert Must Apply the Principles and Methods Reliably

The trial court must also make sure that the expert's conclusions do not rest solely on unfounded extrapolation of the data. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In other words, "the *ipse dixit* of the expert" is not sufficient reason to admit evidence at trial. *Id.* As in the case at hand, if the expert cannot adequately explain how his conclusions resulted from the data, then the testimony should be excluded.

## IV. RULE 414

### A. Admissibility of Evidence Under Rule 414[1]

Federal Rule of Evidence 414 provides an exception to the general restriction in Rule 404 that evidence of a defendant's prior "crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(d). Under Rule 414, "in a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is *admissible*, and

---

[1] "Rule 413(a) is identical to Rule 414(a) except that the former applies to the 'offense of sexual assault,' while the later applies to the 'offense of child molestation.'" *United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999). Thus, the same general analysis applies to both Rules 413 & 414.

10

may be considered for its bearing on *any matter to which it is relevant.*" Fed. R. Evid. 414(a) (emphasis added). To determine whether prior sex offenses are admissible under 414, one must first look at whether the proffered evidence satisfies the three threshold requirements of Rule 414. If it meets these requirements, it *may* be admissible, but before it is admitted, the trial court must also determine whether it should be excluded under a Rule 403 balancing test.

Under *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998), evidence offered under Rule 414 must meet three threshold requirements before being admitted by the trial court. The court must determine (1) that defendant has been accused of a crime of child molestation, (2) that the proffered testimony is evidence of other child molestation offenses by defendant, and (3) that the proffered testimony is relevant. *McHorse*, 179 F.3d 889, 898 (10th Cir. 1999) (citing *Guardia*, 135 F.3d at 1328); *see also United States v. Castillo*, 140 F.3d 874, 882 (10th Cir. 1998) (finding that evidence must be "logically relevant"). The first requirement is clearly satisfied, as Defendant has been indicted on six counts of child sexual molestation. (Doc. 86.) The proffered testimony also satisfies the second requirement because it clearly relates to other child molestation offenses by the defendant. And finally, the proffered testimony satisfies the third requirement of relevancy since it tends to show that Defendant has a propensity to commit sexual offenses against young children in his care when he is alone with them in his home.

B.     **Admissibility of Evidence Under Rule 403**

Rule 414 is also subject to Rule 403's balancing requirement. *McHorse*, 179 F.3d at 898; *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997). Once the court concludes that the evidence satisfies the three threshold requirements of Rule 414, it must then determine whether the proffered evidence should be excluded under Rule 403. However, trial courts should use Rule 403 sparingly to exclude evidence of prior sex offenses. *See Meacham*, 115 F.3d at 1492; *United States*

11

*v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998). The 10th Circuit has held that "under Rule 414 the courts are to 'liberally' admit evidence of prior uncharged sex offenses," *Meacham*, 115 F.3d at 1492; and therefore, "the exclusion of relevant evidence under Rule 403 should be used infrequently, reflecting Congress' legislative judgment that the evidence 'normally' should be admitted." *Enjady*, 134 F.3d at 1433.

In order to balance these two competing interest, the 10th Circuit developed a Rule 403 balancing test. Under *Enjady*, the trial court must consider the following factors:

> (1) how clearly the prior act has been proved; (2) how probative the evidence is of the material fact it is admitted to prove; (3) how seriously disputed the material fact is; and (4) whether the government can avail itself of any less prejudicial evidence.
>
> When analyzing the probative dangers, a court considers: (1) how likely it is such evidence will contribute to an improperly-based jury verdict; (2) the extent to which such evidence will distract the jury from the central issues of the trial; and (3) how time consuming it will be to prove the prior conduct.

*Id.* (quoting M. Sheft, *Federal Rules of Evidence 413: A Dangerous New Frontier*, 33 AM.CRIM.L.REV. 57, 59, n. 16 (1995)).

The first factor requires that the district court "make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007); *see also United States v. Mann*, 193 F.3d 1172, 1174 (10th Cir. 1999); *McHorse*, 179 F.3d at 899; *Enjady*, 134 F.3d at 1433. To make this finding, the Court considered the testimony proffered by the United States at the evidentiary hearing on August 27, 2009. *See* Part II, Statement of Facts, *supra*, pp. 3–5. The fact that there do not appear to be any inconsistencies in the witnesses' statements, that all of the witnesses describe similar acts, that the acts occurred frequently and appear to be part of a larger pattern of ongoing abuse, and the fact that Vernalyn can at least partially corroborate her sister Loucinda's testimony lend credibility to the

12

witnesses' testimony. Thus, while a jury might logically express some doubt as to whether the events occurred due to a lack of physical evidence to corroborate the witnesses' statements, there is sufficient corroborating evidence in the record to support a finding that a jury could reasonably conclude by a preponderance of the evidence that the prior acts occurred.

With regard to the second factor, the prior acts are clearly probative because of their similarity to the charged crime and their ability to corroborate the testimony of the victims in this case. *Mann*, 193 F.3d at 1174 ("Uncharged prior sexual acts are probative if they are similar to the charged crimes.").

The third factor requires an analysis of how seriously the parties dispute the material fact that the evidence is being admitted to prove. In this case, Defendant has denied that the acts of sexual molestation ever occurred and has disputed his ability to perform the acts due to his alleged erectile dysfunction.

As for the fourth factor, the government has no less prejudicial evidence available. All of the alleged acts occurred in private, and therefore, there are no corroborating witnesses. Additionally, there is no independent medical or DNA evidence of the acts. All of the children disclosed the sexual molestation too late for an effective medical examination.

Next, the trial court must look at the probative dangers of admitting the evidence. A jury can only consider the crimes charged in determining a defendant's guilt or innocence, *Castillo*, 140 F.3d at 884, and in this case, there is a danger that when the jury is informed of the prior incidents of child molestation, it may come to an improper verdict based not upon Defendant's guilt or innocence in the acts actually charged, but rather upon his prior acts. This concern can be addressed, however, by providing the jury with proper limiting instructions. *See, e.g., McHorse*, 179 F.3d at 903.

## V.     RULE 609

Defendant filed a Notice of Intent to Cross-Examine the Alleged Victim Regarding Her Prior Conviction for Shoplifting on July 18, 2008 pursuant to Rule 609. (Doc. 60.) Rule 609 provides that "[f]or the purpose of attacking the character for truthfulness of a witness, . . . evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." Fed. R. Evid. 609(a)(2).

While certain theft crimes are considered acts of dishonesty or false statement for the purposes of Rule 609(a)(2) (e.g., embezzlement, false pretenses, fraud, use of a stolen credit card, or passing a bad check), shoplifting falls outside the scope of the Rule. *United States v. Dunson*, 142 F.3d 1213, 1215 (10th Cir. 1998). Therefore, under 10th Circuit precedent, Defendant should not be permitted to impeach Laura G. based on her prior conviction for shoplifting. However, Defendant's Notice of Intent to Cross-Examine the Alleged Victim was unopposed by the United States, and at the hearing on August 27, 2009, the United States expressed concern that any verdict obtained against Defendant in this case might be attacked under *Davis v. Alaska*, 415 U.S. 308 (1974) (concluding that the "State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness"). Thus, the United States favors allowing cross-examination of the witness to proceed despite contrary 10th Circuit case law.

The Court also reminded the United States that under Federal Rule of Evidence 609(d), "[e]vidence of juvenile adjudication is generally not admissible." And while the trial judge does have discretion to admit the testimony in a criminal case if "necessary for a fair determination of the issue of guilt or innocence," Fed. R. Evid. 609(d), such an exception would probably not be

14

necessary in this case. The United States, however, continued to favor allowing the cross-examination rather than face a possible Constitutional challenge on appeal.

Therefore, the Court agreed to allow the cross-examination of the witness by the Defense provided that the government is given the opportunity to further develop the testimony of the witness concerning the facts and circumstances surrounding the incident once the Defense has finished cross-examining the witness on this matter. Both parties stipulated to this condition on the record, and the Court agreed that Defendant could cross-examine the witness on this issue at trial.

## VI.  CONCLUSION

IT IS THEREFORE ORDERED that the United States' Motion to Exclude Testimony of Dr. Juan N. Sosa (Doc. 73) is GRANTED.

IT IS FURTHER ORDERED that the United States' Request for a Pretrial Order Permitting Evidence of Other Uncharged Acts of Sexual Abuse and Sexual Molestation by Defendant Gallardo to Be Introduced at Trial Pursuant to Fed. R. Evid. 414 (Doc. 112) is GRANTED.

IT IS FURTHER ORDERED the Defendant's Request to Cross-Examine Ms. Laura G. Regarding Her Prior Shoplifting Charge Pursuant to Fed. R. Evid. 609(a)(2) is GRANTED.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE